UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JACOB CARATTINI, :
:
    Petitioner, :
:
V. : CASE NO. 3:01-CV-01320 (RNC)
:
:
STATE PRISON WARDEN, :
:
    Respondent. :

RULING AND ORDER

Petitioner, a Connecticut inmate, was convicted after a jury trial of possession of marijuana with intent to sell, possession of cocaine with intent to sell, and two counts of failure to appear in court. He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that his conviction was obtained in violation of his Sixth Amendment right to effective assistance of counsel. This claim was the subject of a prior state habeas proceeding in which petitioner's core allegations were denied by his criminal trial counsel, Timothy Aspinwall.[1] The state habeas court credited Aspinwall's testimony and determined that

---

[1] Petitioner was represented by four different attorneys in the course of his criminal case. Initially, he was represented by a private attorney, William Browne. After some months, petitioner informed the court that he no longer wished to be represented by Browne, and Browne asked to be relieved. Browne was succeeded by the public defender's office. Petitioner replaced them with another private attorney, but he also was allowed to withdraw. The case was then assigned to Attorney Aspinwall in his capacity as a special public defender.

Aspinwall's performance did not fall below an objective standard of reasonableness under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Respondent contends that the state court's determination must be accepted because it is not unreasonable.  I agree and therefore deny the petition.

I.  <u>BACKGROUND</u>

On the evening of January 3, 1993, two Bridgeport police officers saw petitioner on a street corner in a neighborhood known for drug trafficking.  (Tr. 3/21/94 at 60-65; Tr. 3/22/94 at 7.)  He appeared to engage in transactions with two individuals, taking a plastic bag from the first individual and placing it on top of a nearby door, then retrieving something from the bag for the second individual.  (Tr. 3/21/94 at 65-67; Tr. 3/22/94 at 8, 12-16.)  After witnessing the second transaction, the officers detained petitioner and found bags of marijuana beside the door.  (Tr. 3/22/94 at 18-19.)  They then arrested him for possessing the marijuana with intent to sell and found $188 in cash on his person.  (Tr. 3/21/94 at 70-71; Tr. 3/22/94 at 20.)

Petitioner was released into the supervision of the Alternative Incarceration Center (A.I.C.).  (Tr. 1/4/93 at 3-4.)  His A.I.C. counselor informed him that he had to appear in court on January 22.  (Tr. 3/21/94 at 27-30.)  He did not appear in court that day, so a warrant was issued charging him with failure

to appear. (Tr. 3/22/94 at 142-44.) He was arrested and released on March 16. (Tr. 3/16/93 at 1-2.)

A week later, petitioner was standing on a street in the same neighborhood in Bridgeport when he was approached by a man named Sanchez, who asked where he could buy marijuana. (Tr. 3/22/94 at 117-21.) As petitioner was pointing to a nearby yard, the same police officers who had arrested him on the marijuana charge pulled up and called out to him. (Tr. 3/21/94 at 74-75; Tr. 3/22/94 at 28-29.) Sanchez asked petitioner whether he was "dirty." Petitioner responded by opening his jacket, revealing vials in plastic bags. (Tr. 3/22/94 at 120-21.) Petitioner and Sanchez then entered a nearby apartment building. (Tr. 3/21/94 at 75-76; Tr. 3/22/94 at 29-30, 121-22.) The officers followed them into the apartment of a man named DeJesus, who gave the officers permission to conduct a search. (Tr. 3/21/94 at 77-79; Tr. 3/22/94 30-33, 73-74.) Under a sofa pillow near where petitioner was standing, one of the officers discovered bags containing 92 vials of cocaine. (Tr. 3/21/94 at 82-83; Tr. 3/22/94 at 33-35, 41.) Petitioner was arrested for possessing the cocaine with intent to sell. (Tr. 3/21/94 at 84.) No money was found on his person. (Tr. 3/21/94 at 107; Tr. 3/22/94 at 41.) Sanchez was arrested for illegal possession of a firearm. (Tr. 3/22/94 at 38.)

Petitioner was once again released. This time, he was

placed under the supervision of the Co-op Center.  (Tr. 3/21/94 at 40-41.)  His counselor informed him that he had to appear in court on July 27, 1993, the same court date he was given by his then-criminal defense attorney, William Browne. (Id. at 41-42, 48-49.)  He did not appear in court until the next day, July 28, and was therefore charged with another count of failure to appear. (Tr. 3/23/94 at 5-6.)

The drug charges and the charges for failure to appear were joined for trial.  At the trial, the state undertook to prove the drug charges through the testimony of the Bridgeport police officers, a toxicologist, Sanchez and DeJesus.  To prove that petitioner's failures to appear were wilful, it presented the testimony of his A.I.C. and Co-op counselors, his attorney, William Browne, and two state prosecutors.

Petitioner was the main witness for the defense.  With regard to the marijuana charge, he testified that he was detained by the police officers while he was walking to a store to buy soda for a friend, Judith Rodriguez, and that he had nothing to do with the marijuana.  (Tr. 3/23/94 at 51.)  His explanation for the cash was that his mother had given him $100, he had received $80 from another source, and Rodriguez had given him $3 for the soda.  (Id. at 51-52.)  With regard to the cocaine charge, he denied showing any vials to Sanchez and denied that the vials found under the sofa pillow belonged to him.  (Id. at 70-73, 90-

91.)  He testified that he did not appear in court in January because his car broke down (id. at 15-16), and that he did not appear in court in July because he had been given the wrong court date (id. at 83).

In March 1994, petitioner was convicted of all four counts. (Tr. 3/25/94 at 6-8.)  He later pleaded nolo contendere to a count of committing an offense while on release.  (Id. at 8-14.) He was sentenced to a total term of twenty years' imprisonment. (Tr. 5/13/94 at 12-13.)  The Connecticut Appellate Court affirmed the conviction, State v. Carattini, 41 Conn. App. 903 (1996), and the Connecticut Supreme Court denied certification, State v. Carattini, 237 Conn. 928 (1996).

In August 1996, petitioner filed a state habeas petition claiming ineffective assistance of counsel.  (Exh. D at 4.)  He alleged that Aspinwall (1) met with him only once prior to trial; (2) failed to speak with him about the charges, facts, potential witnesses, or whether he should testify; (3) failed to adequately investigate the crime scene; (4) called him as a witness without telling him beforehand and without discussing the pros and cons of having him testify; (5) failed to interview potential witnesses, who should have been called to testify; (6) failed to adequately cross-examine Sanchez; and (7) failed to object to the testimony of his A.I.C. and Co-op counselors and Attorney Browne. (Exh. D at 7-9, 15.)

In February 1998, a two-day evidentiary hearing was held in Connecticut Superior Court (Mihalakos, J.). (Exh. B.) Petitioner was represented by counsel. Testimony was provided by petitioner, his mother, brother, and wife, his friend Judith Rodriguez, and Attorney Aspinwall. In a memorandum of decision, the court found that Aspinwall had "refuted all of the allegations of the petitioner," and concluded that there was "nothing . . . to suggest . . . that [petitioner's] counsel's representation fell below that of a reasonably competent attorney." (Exh. D at 15-16.) The petition was therefore denied. The Appellate Court affirmed, <u>Carattini v. Comm'r of Corr.</u>, 58 Conn. App. 909 (2000), and the Supreme Court denied certification, <u>Carattini v. Comm'r of Corr.</u>, 254 Conn. 932 (2000).

II. <u>DISCUSSION</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was adjudicated on the merits in state court only if adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This case turns on the state court's application of Strickland, which governs claims for relief based on ineffective assistance of counsel. To obtain reversal of a conviction under Strickland, a defendant must show that his lawyer's performance "fell below an objective standard of reasonableness," 466 U.S. at 688, and was so prejudicial as to deprive him of a "fair trial, a trial whose result is reliable," id. at 687.

The present petition does not contain specific allegations, but it is reasonable to assume that petitioner is relying on the same allegations he advanced at the evidentiary hearing in state court. These allegations paint a stark picture of objectively unreasonable professional conduct. However, Aspinwall rebutted them when he testified. There is no doubt that the state court believed Aspinwall and did not believe petitioner.[2] Pursuant to 28 U.S.C. § 2254(e)(1), the court's credibility determinations are presumed to be correct. See Smith v. Mann, 173 F.3d 73, 76 (2d Cir. 1999). To rebut this presumption, petitioner must present "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

---

[2] This is clear in view of the court's statement that Aspinwall "refuted all the allegations of the petitioner," its statement that "nothing" suggested that Aspinwall's representation fell below that of a reasonably competent attorney, and its decision to deny relief. See Marshall v. Lonberger, 459 U.S. 422, 433 (1983) (court's denial of relief can be "tantamount to an express finding against the credibility of [a] defendant").

He has not done so.[3]

On the record before me, the state court could readily find Aspinwall's testimony more credible than that of petitioner. Aspinwall plausibly testified that he prepared for this trial in much the same way he had prepared for his previous trials, by consulting with petitioner, reading the prosecutor's file, discussing the case with the prosecutor and predecessor counsel, interviewing potential witnesses, and visiting the scene of the marijuana arrest. His testimony is consistent with the way he

---

[3] The state habeas petition contains allegations that were not pursued at the evidentiary hearing, principally that Aspinwall (1) failed to file a timely response to the state's request for disclosure of an alibi defense, (2) failed to object to testimony by the police officers that DeJesus told them he saw petitioner put the vials of cocaine under the sofa pillow, and (3) undercut the defense by questioning petitioner in the presence of the jury about the bundling of cocaine vials. I agree with respondent that these allegations do not provide a basis for relief. Petitioner has not explained why Aspinwall's alleged failure to respond to the state's request for disclosure of alibis was unreasonable or prejudicial. The theory of the defense was that petitioner's presence on the street corner in close proximity to the marijuana and in DeJesus's apartment near the cocaine was coincidental. This defense is more in the nature of a general denial than an alibi, and there is no indication that its presentation at trial was impaired by Aspinwall's alleged failure to disclose an alibi defense in a timely manner. The record shows that Aspinwall tried to prevent the jury from hearing about DeJesus's alleged out of court statement and obtained a limiting instruction that the statement could be used only to impeach DeJesus (who testified that he never made the statement). (Tr. 3/22/94 at 78-84.) Finally, although Aspinwall's line of questioning suggested that petitioner was familiar with how cocaine is bundled, this familiarity could have resulted from the fact that petitioner simply spent time in areas known for drug trafficking. It might have been wiser to call a third person for this testimony, but I cannot say it was so prejudicial as to make the outcome of the trial unreliable.

performed in court during the trial. Petitioner's testimony, in contrast, is facially implausible, internally inconsistent and belied by his own conduct. For example, he claimed that he went to trial knowing nothing about the state's case due to Aspinwall's utter failure to consult with him, yet conceded that he knew the particulars of the prosecutor's case as a result of discussions with one of his previous attorneys. On this record, it would be difficult not to consider Aspinwall more credible than petitioner.

Because petitioner has failed to rebut the presumption of correctness that attaches to the state court's credibility findings, Aspinwall's testimony must be accepted as true for purposes of this petition. The issue, then, is whether, given the facts testified to by Aspinwall, the state court's conclusion that petitioner failed to make the showing required by the performance prong of <u>Strickland</u> is unreasonable. For the reasons that follow, the answer must be no.

With regard to the pretrial phase of the case, Aspinwall testified that he remembered meeting with petitioner twice prior to trial (Tr. 2/10/98 at 19); spoke with him about the charges, defenses, and potential witnesses (<u>id.</u> at 20-23); visited the crime scene twice (<u>id.</u> at 23); and discussed with petitioner whether he should testify (<u>id.</u> at 26-28). It is undisputed, moreover, that he contacted any potential witnesses whose names

were given to him by petitioner. Such conduct does not fall below Strickland's objective standard of reasonableness.

With regard to Aspinwall's performance during the trial, petitioner's most troubling allegation, if true, is that Aspinwall called him to the witness stand in the presence of the jury without telling him in advance and without discussing the pros and cons of having him testify. Aspinwall testified that he consulted with petitioner beforehand and urged him to testify. The state court's implicit finding that Aspinwall testified truthfully in this regard is amply supported. The trial record shows that petitioner did not hesitate to take the stand and his trial testimony reflects preparation.

Petitioner's allegation that Aspinwall failed to interview potential witnesses whose testimony would have been helpful to the defense is similarly unavailing. Petitioner's main contention is that his mother should have been called to corroborate his testimony about the $100 in cash. At the habeas hearing, Aspinwall testified that he interviewed petitioner's mother before the trial and decided not to call her as a witness because he thought the jury would not believe her. (Tr. 2/10/98 at 69.) Whether to call a witness is usually a strategic decision that cannot be second-guessed by a habeas court. Pavel v. Hollins, 261 F.3d 210, 217 (2d Cir. 2001). Petitioner argues that Aspinwall's decision cannot be regarded as strategic because

his mother's testimony could do no harm.  But her testimony would have added little to the defense and calling her to the stand would have risked potentially damaging cross-examination.[4]

Petitioner's contention that Aspinwall failed to conduct a proper cross-examination of Sanchez is without merit.  The trial record shows that Aspinwall spent significant time attacking Sanchez's overall credibility, as the state habeas court correctly noted.  (Tr. 2/10/98 at 73-74.)  Petitioner contends that Aspinwall was required to probe Sanchez's direct testimony that he asked petitioner whether he was "dirty" and petitioner responded by opening his jacket to reveal some vials.  Petitioner does not identify any questions Aspinwall could have asked Sanchez that likely would have undercut his direct testimony on this subject.  He simply alleges that Aspinwall should have questioned Sanchez in depth.  Aspinwall reasonably could have made a conscious decision to try to impeach Sanchez's overall credibility rather than draw attention to his direct testimony about the vials.  This decision was within the range of reasonable professional judgment, particularly since Sanchez may have been motivated to provide damaging testimony against

---

[4] Petitioner alleges that Aspinwall was required to call certain other witnesses, but he has conceded that he did not tell Aspinwall about them.  (Tr. 2/9/98 at 54.)  He also alleges that Aspinwall did not fully develop the testimony of Judith Rodriguez, a witness who was called, but it is not apparent from the record how her testimony could have been further developed or what good it might have done.  (See Tr. 3/23/94 at 143-48.)

petitioner because of his pending illegal possession of a firearm charge.

Petitioner's contention that Aspinwall was obliged to object to the testimony of the A.I.C. and Co-Op Center counselors and Attorney Browne also fails. He argues that their testimony was irrelevant but their testimony was relevant to the charges of failure to appear on the the element of willfulness. (Id. at 60.) He further contends that Aspinwall should have objected to Browne's testimony on the basis of the attorney-client privilege. As Aspinwall correctly observed at the hearing, however, a lawyer's communication to a client informing him of a court date is not protected by the privilege. See Olson v. Accessory Controls & Equip. Corp., 254 Conn. 145, 157 (2000).

III. CONCLUSION

For the foregoing reasons, petitioner has failed to demonstrate that the state court's application of Strickland was objectively unreasonable. Accordingly, the petition is hereby denied. Judgment will enter for respondent. The Clerk may close the file.

So ordered this 21st day of October 2005.

```
            /s/
_____
      Robert N. Chatigny
   United States District Judge
```